Ruben BASKINS, Plaintiff,

v.

J. C. MOORE, Director, South Carolina
Probation, Parole and Pardon
Board, et al., Defendants.

George Albert WATT, Plaintiff,

v.

Messrs. Walter D. TYLER, Jr., et al.,
Defendants.

Levi JENKINS, on behalf of himself and
all others similarly situated,
Plaintiff,

v.

Walter D. TYLER et al., Defendants.

Civ. A. Nos. 72-877, 73-268 and 73-356.

United States District Court,
D. South Carolina,
Columbia Division.

June 19, 1973.

Ruben Baskins, pro se.

George Albert Watt, pro se.

Robert R. Madama, Jr., Carolina Community Law Firm, Columbia, S.C., for plaintiffs Levi Jenkins, on behalf of himself and all others similarly situated.

Emmet H. Clair, Asst. Atty. Gen., Columbia, S.C., for defendants.

## ORDER

BLATT, District Judge.

In these consolidated complaints, the plaintiffs are state prisoners who have had parole applications denied by the South Carolina Probation, Parole and Pardon Board, the individual board members being the defendants in these several actions. The complaints all assail the constitutionality of various Parole Board procedures. The defendants have moved in each case for summary judgment pursuant to Rule 56(b) of the Federal Rules of Civil Procedure relying on a recent United States Supreme Court decision in which the Court held that suits by prisoners seeking early release from confinement should be characterized as petitions for habeas corpus relief and not civil suits cognizable under 42 U.S.C. § 1983, the former requiring initial resort to state procedures, the latter not. Preiser v. Rodriguez, 411 U.S. 475, 93 S.Ct. 1827, 36 L.Ed.2d 439. The Court cited considerations of federal-state comity as undergirding their decision requiring prisoners who seek premature release from confinement to avail themselves of orderly state procedures for the vindication of their constitutional claim prior to seeking federal relief.

"It is difficult to imagine an activity in which a State has a stronger interest, or one that is more intricately bound up with state laws, regulations, and procedures, than the administration of its prisons. The relationship of state prisoners and the state officers who supervise their confinement is far more intimate than that of a State and a private citizen. For state prisoners, eating, sleeping, dressing, washing, working, and playing are all done under the watchful eye of the State, and so the possibilities for litigation under the Fourteenth Amendment are boundless. What for a private citizen would be a dispute with his landlord, with his employer, with his tailor, with his neighbor, or with his banker becomes, for the prisoner, a dispute with the State. Since these internal problems of state prisons involve issues so peculiarly within state authority and expertise, the States have an important interest in not being bypassed in the correction of these problems. Moreover, because most potential litigation involving state prisoners arises on a day-to-day basis, it is most efficiently and properly handled by the state administrative bodies and state courts, which are, for the most part, familiar with the grievances of state prisoners and in a better physical and practical position to deal with those grievances. . . . The strong considerations of comity that require giving a state court system that has convicted a defendant the first opportunity to correct its own errors thus also require giving the States the first opportunity to correct the errors made in the internal administration of their prisons." *Id.* 411 U.S. at 491, 93 S.Ct. at 1837–1838.

The petitioner, Levi Jenkins, is represented by counsel[1] who resists the

---

[1] While the petitioners Watt and Baskins are not represented by counsel, Jenkins instituted his action purporting to represent the class of all prospective parolees who have had their parole applications denied by the defendant Parole Board. While not deciding the efficacy of allowing Jenkins to represent the alleged class, the issues raised by Jenkins are equally applicable to Watt and Baskins and,

State's motion for summary judgment and asks this court to vacate its earlier Order, dated May 31, 1973, granting summary judgment, advancing the following reasons:

1) The petitioner has not sought immediate release *from confinement and,* therefore, *Preiser* is not applicable.

2) Even if *Preiser* is applicable to petitioner's suit, its requirement that he exhaust state remedies prior to seeking federal relief is effective *only* if there exists an avenue in the state courts for vindication of petitioner's allegedly repressed constitutional rights.

With regard to the first contention, petitioner's theory is based, in this court's opinion, on an overly constrictive interpretation of *Preiser*. *Preiser* involved a suit by three New York state prisoners attacking a prison procedure by which their "good time" credits were taken from them as a result of certain prison disciplinary proceedings. On the merits of this suit, the district court in which it was instituted held that the assailed procedures in fact deprived the prisoners of due process of the law and directed the defendants to restore the appropriated good time credits. Petitioner narrowly reads *Preiser* as restricted to situations where the remedy sought, if granted, would *invariably* result in immediate release from confinement. However, as the Court in *Preiser* itself observed:

> "In the case before us, the respondents' suits in the District Court fell squarely within this traditional scope of habeas corpus. They alleged that the deprivation of their good conduct time credits was causing or would cause them to be in illegal physical

confinement, i. e., that once their conditional release date had passed, any further detention of them in prison was unlawful; and they sought restoration of those good time credits, which, by the time the District Court ruled on their petitions, meant their immediate release from physical custody.

> Even if the restoration of the respondents' credits would not have resulted in their immediate release, but only in shortening the length of their actual confinement in prison, habeas corpus would have been their appropriate remedy. For recent cases have established that habeas corpus relief is not limited to immediate release from illegal custody, but that the writ is available as well to attack future confinement and obtain future releases." 411 U.S. at 487, 93 S.Ct. at 1835.

Thus, in a succession of decisions, the Supreme Court and lower courts have expatiated the scope of the Writ to make it available to: one who is released on bail or his own recognizance, Hensley v. Municipal Court, 411 U.S. 345, 93 S.Ct. 1571, 36 L.Ed.2d 294 (1973); one who is incarcerated in one state and attacks not that conviction but the detainer of another state which has not tried him, Braden v. 30th Judicial District, 410 U.S. 484, 93 S.Ct. 1123, 35 L.Ed.2d 443 (1973), Word v. N. C., 406 F.2d 352 (4 Cir. 1969); one who is released from confinement prior to adjudication of his habeas claim, Carafas v. LaVallee, 391 U.S. 234, 88 S.Ct. 1556, 20 L.Ed.2d 554 (1968); and one who attacks the second of two consecutive sentences but not the first, Peyton v. Rowe, 391 U.S. 54, 88 S.Ct. 1549, 20 L.Ed.2d 426 (1968). With regard to parole [2] one whose parole has

---

therefore, the court's reasoning with regard to Jenkins' contentions are of equal force respecting Watt and Baskins and the petitions are considered as one for purposes of the motion for summary judgment.

2. In parole release decisions decided prior to *Preiser*, the federal courts treated the prisoner complaints as cognizable under

42 U.S.C. § 1983 and did not require exhaustion of state remedies. Taliferro v. New Jersey Parole Board, 460 F.2d 289 (3 Cir. 1972); Menechino v. Oswald, 430 F.2d 403 (2 Cir. 1970). But see, United States ex rel. Bey v. Connecticut State Board of Parole, 443 F.2d 1079 (2 Cir. 1971) (parole revocation case instituted under federal habeas corpus statute).

been revoked causing him to be reincarcerated can invoke habeas corpus jurisdiction to review said revocation, Morrissey v. Brewer, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972), United States ex rel. Bey v. Connecticut State Board of Parole, 443 F.2d 1079 (2 Cir. 1971), and parole status does not preclude one from assailing by habeas corpus the conviction from which he was paroled. Jones v. Cunningham, 371 U.S. 236, 83 S.Ct. 373, 9 L.Ed.2d 285 (1963). Habeas corpus is also

> "available to a prisoner incarcerated under a sentence, the validity of which he did not question, to litigate the validity of other convictions which deferred his eligibility for consideration for parole on the unquestioned sentence. (Martin v. Commonwealth, 349 F.2d 781 (4 Cir. 1965). We now conclude that the same principle is applicable to one who is already eligible for consideration for parole on a sentence which he does not question, but whose chances for parole are manifestly restricted by the fact of other convictions and unserved sentences thereon, allegedly invalid." Williams v. Peyton, 372 F.2d 216, 217 (4 Cir. 1967).

While the above cases concern the expansion of the ambit of "custody", they, nevertheless, reflect the Court's determination to repudiate the notion that the habeas corpus writ is a "static, narrow formalistic remedy" (Jones v. Cunningham, 371 U.S. at 243, 83 S.Ct. 373). "Thus, we have consistently rejected interpretations of the habeas corpus statute that would suffocate the writ in stifling formalisms or hobble its effectiveness with the manacles of arcane and scholastic procedural requirements." Hensley v. Municipal Court, supra, 411 U.S. at 350, 93 S.Ct. at 1574.

In *Preiser*, the Court reviewed the overlapping federal remedies embodied in 42 U.S.C. § 1983, and 28 U.S.C. § 2254, and held that "when a state prisoner is challenging the very fact or duration of his physical imprisonment, and the relief he seeks is a determination that he is entitled to immediate or more speedy release from that imprisonment, the sole federal remedy is a writ of habeas corpus." 411 U.S. at 500, 93 S.Ct. at 1841. The test fashioned by the Court requires an analysis of the relief sought measured against the "essence" and "core" of habeas corpus. In the instant case, petitioner reasons that as the relief sought in *Preiser* would have resulted in the immediate release of the prisoners by reinstatement of their accrued good time, thus accelerating their time served past the minimum required for release or, at least, result in a diminution of the unexpired term of sentence, the touchstone of habeas relief is immediacy. Thus, as petitioner here seeks only a declaration that certain procedures are unconstitutional and a new hearing, he does not seek immediate release but only a renewed prospect of release. Prisoners who have had their parole applications denied and then seek a determination that the procedures employed by the reviewing board are constitutionally defective seek new proceedings consonant with their concept of due process; the goal of obtaining a new hearing, of course, is to seek release from confinement. Thus, at the second level, they do seek release. Petitioner, of course, construes *Preiser* as only reaching cases where initial and immediate relief is sought. As an analogue, a prisoner seeking to vitiate an allegedly involuntarily tendered plea of guilty does not seek immediate release from custody, but an opportunity to change his plea.[3]

---

3. See, e. g., Mr. Justice Harlan's dissenting opinion in Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 in which he interpreted the remedy, in situations where a federal district judge failed to canvass a defendant in compliance with Rule 11 of the Federal Rules of Criminal Procedure, to require that the plea "be set aside and the defendant permitted to *replead*, regardless of lower-court findings that the plea was in fact voluntary." 395 U.S. at 247, 89 S.Ct. at 1714 (emphasis added). Of course, on federal habeas corpus the district court

If a determination is made that the plea was in fact improvidently accepted, then the petitioner's initial goal is accomplished. However, the relief granted is the opportunity to replead and only when the petitioner pleads not guilty, is tried and acquitted, has he then effectuated the long-range goal of his habeas petition—release from confinement. Therefore, both in habeas petitions seeking to vitiate guilty pleas and petitions seeking to declare parole release proceedings defective, the initial relief sought, a declaration that the vehicle of confinement was constitutionally defective and the concomitant remedies—a trial by jury or a second parole release proceeding—are preparatory to the ultimate relief sought—determination by a jury of innocence, or granting of parole, and the resultant goal—release from confinement itself. The parallels are acute. Accordingly, it is this court's opinion that the principle articulated in *Preiser*—that of extending the comity grounded doctrine of exhaustion of state remedies to certain categories of prisoner petitions —would be violated by adopting the restrictive interpretation advanced by petitioner.

■■ In sum, petitioner's remedy lies in habeas corpus; he must, therefore, exhaust his state remedies before seeking federal relief. However, before exhaustion of state remedies is required, the "prisoner's state remedy must be adequate and available. . . ." Preiser

v. Rodriguez, supra, 411 U.S. at 493, 93 S.Ct. at 1838.[4]

■■ This court's attention is thus directed to the South Carolina Post Conviction Relief Procedure Act, South Carolina Code Annotated, Section 17–601 et seq. Section 17–601 provides:

"§ 17–601. *Who may institute proceeding; to what extent remedy exclusive.*—(a) Any person who has been convicted of, or sentenced for, a crime and who claims:

(1) That the conviction or the sentence was in violation of the Constitution of the United States or the Constitution or laws of this State;

(2) That the court was without jurisdiction to impose sentence;

(3) That the sentence exceeds the maximum authorized by law;

(4) That there exists evidence of material facts, not previously presented and heard, that requires vacation of the conviction or sentence in the interest of justice;

(5) That his sentence has expired, his probation, parole or conditional release unlawfully revoked, or he is otherwise unlawfully held in custody or other restraint; or

(6) That the conviction or sentence is otherwise subject to collateral attack upon any ground of alleged error heretofore available under any common law, statutory or other writ, motion, petition, proceeding or reme-

---

in granting relief orders the state prisoner's release contingent on the State's failure to remedy the defect—in involuntary guilty plea cases, the remedy is to allow the defendant to replead. In the interim between the court's order and the second arraignment, the defendant is, of course, eligible for bail, but he is, even if released on bail, subject to restrictions sufficient to constitute "custody" and thereby becomes eligible for further habeas relief. See, Hensley v. Municipal Court, supra.

4. Thus, as in all habeas proceedings, if there is "an absence of available State corrective process or the existence of circumstances rendering such process inef-

fective to protect the rights of the prisoner" (28 U.S.C. § 2254(b)), exhaustion is not required. The "circumstances rendering process ineffective" exception provides that a prisoner should not be required to embark on an exercise in futility prior to seeking his federal remedy. Thus, the Supreme Court's explicit reference to the exhaustion exception makes available to the petitioner the full panoply of futility factors articulated by the courts. See Sokol, A Handbook of Federal Habeas Corpus § 23 (2d ed. 1969). The exhaustion principle itself is a "salutary doctrine . . . rooted as it is in comity . . ." Smith v. State of Kansas, 356 F.2d 654, 656 (10 Cir. 1966).

dy; may institute, without paying a filing fee, a proceeding under this chapter to secure relief. *Provided, however,* that this section shall not be construed to permit collateral attack on the ground that the evidence was insufficient to support a conviction.

(b) This remedy is not a substitute for nor does it affect any remedy incident to the proceedings in the trial court, or of direct review of the sentence or conviction. Except as otherwise provided in this chapter, it comprehends and takes the place of all other common law, statutory or other remedies heretofore available for challenging the validity of the conviction or sentence. It shall be used exclusively in place of them."

This Post Conviction Relief Act provides the "exclusive" [5] remedy for one attacking the validity of his sentence or conviction. Petitioner vigorously contends that the South Carolina Post Conviction Relief Act does not contemplate an action by one in his position. However, reference is made to Section 17-601(a)(5) which makes available this statutory procedure to one who claims "he is otherwise unlawfully held in custody or other restraint . . ." Petitioner's argument that the general catchall provision embodied in subsection (a)(5) excludes those in petitioner's

5. While Section 17-601(b) provides that the South Carolina Post Conviction Relief Act shall supersede all other "common law, statutory or other remedies" previously available to challenge a conviction or sentence, Article 1, Section 23, of the South Carolina Constitution provides: "The privilege of the writ of *habeas corpus* shall not be suspended unless when, in case of insurrection, rebellion or invasion, the public safety may require it." Article 5, Section 4, of the South Carolina Constitution provides in part: "The Supreme Court shall have power to issue writs or orders of . . . habeas corpus and other original and remedial writs. . . . "

In Harvey v. State, 310 F.Supp. 83 (D.S.C.1970), the Honorable Robert W. Hemphill held that the South Carolina Post Conviction Relief Act did not suspend the writ of habeas corpus or make its invocation more difficult (thus upholding the statute's constitutionality) and observed that "South Carolina's Post-Conviction Relief Act provides relief similar to that envisioned by Congress (for those convicted in federal courts) in 28 U.S.C. § 2255." 310 F.Supp. at 85. The enactment of a procedural vehicle for the vindication of repressed constitutional rights of those attacking their sentence or conviction does not supplant the constitutional right to seek habeas corpus nor does it unconstitutionally suspend that right. See, Kinnell v. Crouse, 384 F.2d 811 (10 Cir. 1967) cert. den. 390 U.S. 999, 88 S.Ct. 1205, 20 L.Ed.2d 98 (1968). In light of the above, even if the South Carolina Post Conviction Relief Act does not statutorily contemplate an action such as is here involved, the petitioner is not without a state habeas corpus remedy. While 17-601(b) purports to establish the Post Conviction Relief Act as the *exclusive* vehicle for these type actions, it is merely a procedural device and does not abrogate the constitutionally bestowed original jurisdiction of the South Carolina Supreme Court to entertain such actions. As Section 17-601 et seq., is modeled after the federal post conviction relief statute (28 U.S.C. § 2255), the following comment by the Court of Appeals for the Seventh Circuit in a case in which the validity of Section 2255 was attacked as being violative of the constitutional prohibition against suspension of the writ of habeas corpus is apposite to this point:

"For an even more fundamental reason section 2255 is not a deprivation of constitutional rights. Habeas corpus continues to be available when the remedy under that section is shown to be 'inadequate or ineffective.' The section 2255 provision merely prescribes a procedure different from that of habeas corpus whereby one may collaterally attack a conviction. So long as this procedure is available with provision for habeas corpus in the event a section 2255 proceeding is 'inadequate or ineffective,' there is no constitutional issue." Stirone v. Markley, 345 F.2d 473, 475-476 (7 Cir. 1965).

Thus, if petitioner's claim is of the core of habeas corpus, petitioner must exhaust either by way of the statutory procedural device—Section 17-601 et seq.—or, if Section 17-601 be deemed inadequate or ineffective, by way of writ of habeas corpus filed with the South Carolina Supreme Court.

station necessarily is posited on the same theory he advanced respecting his contention that Preiser did not reach those who do not seek immediate release from confinement. That is, petitioner would impose on subsection (a)(5) the same wooden interpretation he gave the expansive definition of "core of habeas corpus" expounded by the Court in *Preiser*. For reasons equally impelling here, as above, this court is not prepared to render such an attenuating construction to a doctrine dynamic and remedial in nature. "The very nature of the writ demands that it be administered with the initiative and flexibility essential to insure that miscarriages of justice within its reach are surfaced and corrected." Harris v. Nelson, 394 U.S. 286, 291, 89 S.Ct. 1082, 1086, 22 L.Ed.2d 281 (1969). This court concludes the South Carolina Post Conviction Relief Act encompasses an action by a petitioner seeking an initial declaration that procedures employed by the Parole Board are unconstitutional and seeking by way of such a declaration a second proceeding by which he might ultimately secure his release.

"The South Carolina (Post Conviction Relief) Act affords all the protections contemplated by our founding fathers. It is designed to afford post-conviction relief of a scope sufficiently broad to comply with the mandates and holdings of the United States Supreme Court relating to federal review of state convictions." Harvey v. State, 310 F.Supp. 83, 85 (D.S.C. 1970).

Therefore, there exists in the South Carolina Post Conviction Relief Act an effective avenue for the vindication of any repressed constitutional rights and as none of the petitioners in any of these cases have availed themselves of this procedure, absent an allegation, and proof, that such procedures are futile or peculiarly unavailable to them, the motion for summary judgment was providently made and the instant petitions were properly dismissed.

And it is so ordered.