367 A.2d 704.

STATE *vs.* GERARD T. OUIMETTE.

DECEMBER 31, 1976.

PRESENT: Paolino, Joslin, Kelleher and Doris, JJ.

DORIS, J. This is an appeal from a denial of postconviction relief by the Superior Court. The defendant, Gerard T. Ouimette, was serving a term of ten years in prison

after having been convicted of conspiracy to murder. After completing the requisite one-third of his sentence, he became eligible to apply for parole. General Laws 1956 (1969 Reenactment) §13-8-9. Subsequently, he made several applications for parole, all of which were denied by the Parole Board [hereinafter sometimes referred to as "the board"]. In denying parole on each occasion, the board gave brief reasons for its decisions.[1]

The defendant filed a petition for a writ of certiorari with this court to review the Parole Board proceedings, alleging that it violated his constitutional due process rights. We denied the petition "without prejudice to the petitioner [defendant] to seek relief under any other available remedy". *In re Gerard Ouimette,* 115 R.I. 959, 350 A.2d 618 (1976). The defendant then proceeded, on February 18, 1976, to apply for postconviction relief in the Superior Court pursuant to G. L. 1956 (1969 Reenactment) §10-9.1-1, as enacted by P. L. 1974, ch. 220, §3. After a hearing on March 16, 1976, on his application for postconviction relief, relief was denied by the Superior Court justice. The defendant has appealed the denial of post-

[1]It is alleged that the defendant has been denied parole on five separate occasions. Although the Parole Board's decisions on those applications are not a part of the record before this court there is no dispute as to the reasons given by the board for denying parole. At the hearing before the trial justice, the defendant's counsel stipulated that the Parole Board's reasons were accurately reproduced in the state's memorandum before the trial justice. They were as follows:

"1. December 27, 1973—'record';

"2. June 27, 1974—'there doesn't appear to be a reasonable probability at this time that you would live and remain at liberty without violating the law because of your long record of serious offenses;'

"3. December 26, 1974—refused to appear at hearing;

"4. January 29, 1975—'Your release at this time would depreciate the seriousness of the offense committed;' and

"5. June 6, 1975—'record and prison behavior.' "

conviction relief to this court and the issue raised is whether the trial justice erred in declining to give postconviction relief.[2]

The threshold question is whether §10-9.1-1, the postconviction remedy statute, is an appropriate way to raise objections to Parole Board proceedings. Specifically, defendant asserts that, under §10-9.1-1(a)(5), he qualifies since he is a person who has been convicted and sentenced for a crime and is "otherwise unlawfully held in custody or other restraint" as a result of unlawful procedures by the board. We are of the opinion that this clause of the postconviction statute is a proper vehicle for raising limited objections to the proceedings of the Parole Board.

We recognize the "hands-off" policy which has traditionally been invoked when dealing with Parole Board proceedings and the overall reluctance to interfere with what must necessarily be highly discretionary decisions. *See generally State* v. *Fazzano,* 96 R.I. 472, 194 A.2d 680 (1963); *Rondoni* v. *Langlois,* 89 R.I. 373, 153 A.2d 163 (1959). However, where, as here, a denial of parole is being questioned on the sole ground that the proceedings were not in accordance with due process of law, we will undertake at least a limited review to decide:

1. The scope of any due process rights available at a parole release hearing; and

2. Whether, at any of defendant's parole release hearings, those rights have been abridged.

South Carolina has a postconviction statute which is very similar to the one in Rhode Island. In construing this South Carolina statute in a case questioning Parole

---

[2]The relief specifically requested was "immediate release from unlawful confinement and the establishment of a reason criteria [for Parole Board decisions]."

Board release proceedings, the United States District Court for South Carolina said:

> "This court concludes the South Carolina Post Conviction Relief Act encompasses an action by a petitioner seeking an initial declaration that procedures employed by the Parole Board are unconstitutional and seeking by way of such a declaration a second proceeding by which he might ultimately secure his release." *Baskins* v. *Moore,* 362 F.Supp. 187, 193 (D.S.C. 1973).

The state, in its brief, asserts that this is not analagous to our situation because §13-8-22, as amended by P. L. 1970, ch. 117, §1 says: "The parole board in the discharge of its duties under this chapter shall not be required to receive or consider any petition \* \* \*." The state's conclusion from this is that the Legislature intended the board to have absolute, unreviewable discretion, and that therefore *Baskins* is inapposite. We disagree.

The defendant is not contesting the board's right under §13-8-22 to refuse to consider a parole application. (Defendant's applications for parole *were* given consideration by the board.) In fact, we are not aware of any case in this jurisdiction where the Parole Board has actually refused to consider an application for parole.[3] Instead, defendant is saying that the board, in not giving sufficient reasons for its decisions after considering and denying his applications for parole, violated his due process rights.

The state, citing our decision in *Lee* v. *Kindelan,* 80 R.I. 212, 95 A.2d 51 (1953), maintains that since there is no right to parole in Rhode Island, no constitutional due process rights accrue in parole *release* proceedings. *See State* v. *Fazzano, supra* at 478, 194 A.2d at 684; *Rondoni*

---

[3] We therefore need not decide whether it would be constitutionally impermissible to arbitrarily refuse to review a petition for parole submitted by a prisoner who is statutorily eligible for parole under G. L. 1956 (1969 Reenactment) §13-8-9.

v. *Langlois, supra* at 377, 153 A.2d at 165. Of course, these cases were decided some time before *Morrissey* v. *Brewer,* 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972), the landmark case which effected great changes in parole *revocation* proceedings. Since that time we have come to recognize that a range of due process rights is required in parole, probation and deferred sentence *revocation* proceedings. *See State* v. *Bettencourt,* 112 R.I. 706, 315 A.2d 53 (1974).

What we are faced with today is the question of whether any of these due process rights also apply to parole *release* proceedings. It seems to us that §10-9.1-1, the postconviction remedy statute, is the proper vehicle for bringing this question before the court.

In *Morrissey* v. *Brewer, supra,* the Court analyzed the interests of a parolee in his continued liberty and found them to be substantial enough to require "some informal procedural guarantees" before parole could be revoked. However, it also suggested that one with a mere hope of conditioned liberty did not rate the same considerations.[4]

We agree with the Supreme Court that the interests of one who is already on parole appear to be greater than the interests of one who merely has a hope of "conditional liberty". However, this does not necessarily mean that the person in prison has so little "interest" in prospective parole that due process protections do not apply to him at all. In fact, at least one court has found that a prisoner's

---

[4]The Court quoted from *United States ex rel. Bey v. Connecticut Bd. of Parole,* 443 F.2d 1079, 1086 (2d Cir. 1971) as follows:

"It is not sophistic to attach greater importance to a person's justifiable reliance in maintaining his conditional freedom so long as he abides by the conditions of his release, than to his mere anticipation or hope of freedom." *Morrissey v. Brewer,* 408 U.S. 471, 482 n.8, 92 S. Ct. 2593, 2601 n.8, 33 L.Ed.2d 484, 495 n.8 (1972).

interest in parole release is no less than a parolee's interest in continued freedom.

> "Parole was thenceforth to be treated as a 'conditional liberty,' representing an 'interest' entitled to due process protection. A prisoner's interest in prospective parole, or 'conditional entitlement,' must be treated in like fashion. To hold otherwise would be to create a distinction too gossamer-thin to stand close analysis. Whether the immediate issue be release or revocation, the stakes are the same: conditional freedom versus incarceration." *United States ex rel. Johnson* v. *Chairman, New York State Bd. of Parole,* 500 F.2d 925, 928 (2d Cir. 1974), vacated and remanded as moot *sub nom. Regan* v. *Johnson,* 419 U.S. 1015, 95 S.Ct. 488, 42 L.Ed.2d 289 (1974).

It is unquestionably true that due process is a flexible concept calling for various applications depending on the circumstances of each case. *Morrissey* v. *Brewer, supra* at 481, 92 S.Ct. at 2600, 33 L.Ed.2d at 494.

> "[C]onsideration of what procedures due process may require under any given set of circumstances must begin with a determination of the precise nature of the government function involved as well as of the private interest that has been affected by governmental action." *Cafeteria & Restaurant Workers Union, Local 473* v. *McElroy,* 367 U.S. 886, 895, 81 S.Ct. 1743, 1748-49, 6 L.Ed.2d 1230, 1236 (1961).

The long time view of parole as a privilege or an act of grace on the part of the Legislature rather than a vested right has been criticized as no longer being a viable distinction. "The majority [of the Court of Appeals] recognized that the traditional view of parole as a privilege rather than a vested right is no longer dispositive as to whether due process is applicable * * *." *Morrissey* v. *Brewer, supra* at 474, 92 S.Ct. at 2597, 33 L.Ed.2d at 490. What we must do then is to balance the interests that the prisoners, the state and society have in the parole process

and decide to what extent, if any, due process should apply to parole release proceedings.

The parole system has undergone vast changes over the years and has now reached the point where parole is more likely to occur rather than release after completion of sentence.[5]

> "During the past 60 years, the practice of releasing prisoners on parole before the end of their sentences has become an integral part of the penological system. [Citation omitted]. Rather than being an *ad hoc* exercise of clemency, parole is an established variation on imprisonment of convicted criminals." *Morrissey* v. *Brewer, supra* at 477, 92 S.Ct. at 2598, 33 L.Ed.2d at 492.

This certainly suggests that a prisoner who has served the requisite one-third of his sentence in order to be statutorily eligible for parole has more than a "mere hope" of obtaining his conditional release. In fact he has a very great interest in parole proceedings since, at least statistically, he has a better than 50-50 chance (see note 5, *supra*) of being paroled at some time prior to the expiration of his sentence. This being so, the Parole Board's decision is of critical importance to an inmate seeking parole since the decision will ultimately determine whether conditional liberty is gained or further incarceration required.

The state, and society in general, also have important interests which are affected by parole release proceedings. The prospective parolee has been convicted of a crime and sentenced to a period of imprisonment to punish and rehabilitate him, to protect society from his antisocial be-

---

[5]"In 1970, 54% of the adults released from prison in a total of forty-six reporting jurisdictions left as parolees. Their number exceeded 54,000." Kastenmeier and Eglit, *Parole Release Decision-Making: Rehabilitation, Expertise, and the Demise of Mythology,* 22 Amer. U. L. Rev. 477, 481 (1973).

havior and to deter and discourage this type of behavior in the future. Although §13-8-9 provides for release prior to the end of a sentence, such release is accomplished with the knowledge that there is some risk involved to society. Nonetheless, it has been decided to balance this risk against the possibility of restoring former law breakers to useful positions in lawful society. Furthermore, society may be saved the expense of providing for room, board and supervision of each inmate who may be released on parole. With these factors in mind, §13-8-14 has set forth certain conditions an inmate must meet before parole may be granted.[*]

It is very much in society's interest to make sure that these conditions are carefully considered by the Parole Board. It would certainly be undesirable to either prolong imprisonment unnecessarily or to release a prisoner before he had served his full term unless he was likely to be able to function in lawful society. The state, as well as the prospective parolee, has an interest in seeing that fair determinations are made, avoiding arbitrary decision making. Thus, on balance, it appears that some degree of minimal due process is both necessary and desirable in parole release proceedings to insure fairness to all.

We have carefully reviewed the laws relating to parole and have found that they give little guidance to the board as to the procedures to be followed in processing parole

---

[*]General Laws of 1956 (1969 Reenactment) §13-8-14 reads as follows:

"Disposition of prisoner to reform-Assurance of employment or support.—A permit shall not be issued to any prisoner under the authority of §§13-8-9 to 13-8-13, inclusive, unless it shall appear to the board:

"a. That such prisoner is deserving of such permit by reason of his good conduct while imprisoned, and that such prisoner has shown a disposition to reform.

"b. That such prisoner will be able to secure employment as soon as he is at liberty upon parole, or is otherwise provided for so that he will not become dependent upon public charity."

applications. Section 13-8-9 gives the eligibility require-
ments for parole; §13-8-14 gives the criteria for deciding
whether parole should be granted; and G. L. 1956 (1969
Reenactment) §§13-8-6 and 13-8-23, as amended by P. L.
1972, ch. 163, §9 and §13-8-22 give the manner in which
information relative to paroles may be obtained from vari-
ous persons and agencies. However, nowhere does the law
indicate how inmates should make application for parole,
how often applications may be submitted if rejected, when
or if hearings are held before the board[7] or how often the
board meets to consider parole applications. Of course,
none of these questions need be dealt with now since they
are not the subject of this appeal.[8]

What is raised by this appeal is whether the scope of
due process at parole release proceedings should include the
requirement that the board give reasons for its decisions.
As we have indicated, since due process is a flexible con-
cept which changes from situation to situation, we must
balance the burdens of requiring the board to give reasons
against the seriousness of the right to have those reasons
revealed.

The Parole Board, because of its special expertise, has
been granted an extraordinarily broad amount of discre-
tion to make decisions regarding parole release. These
decisions, in reality, are based on predictions of the future
behavior of prospective parolees. The scope of these "pre-

---

[7]General Laws 1956 (1969 Reenactment) §13-8-6, as amended by P. L.
1972, ch. 163, §9 indicates that hearings are in fact held. In pertinent part
it reads:

"Such folders shall be made available to each member of the board
not less than a week prior to *its meeting to interview applicants for
parole * * *.*" (Emphasis added.)

[8]In fact, although not a part of this record, we understand that regula-
tions dealing with these questions have been promulgated. We are un-
aware of challenges to any such regulations except the present one asking
for reasons for Parole Board decisions.

dictions" is limited by the conditions outlined in §13-8-14. See note 6, *supra*. As can be readily seen, the board could find a number of reasons why a prisoner did not measure up to these standards.

For example, a drug addict, convicted and sentenced for a theft crime, might be a poor risk for parole if he had made no progress toward ending his addiction. The board might, in that instance, refuse parole either because of "no disposition to reform" or "unable to secure employment", the underlying reason being that a drug addict would have to continue to steal to support his habit. No reasonable person would question the discretion of the board to render such a decision. Therefore, the state asks why it should be necessary to make the board reveal to the prisoner the reasons for its decisions.

The answers to this question literally leap out. First and foremost, a prisoner, without being a mind reader, could only hazard a guess as to why the board refused to grant him a parole on any particular occasion. This speculation facilitates neither rehabilitation nor high morale among inmates.

> "[A] reasons requirement can serve the important function of promoting rehabilitation by relieving inmates' frustrations and letting them know how they might, by improving their prison behavior or taking steps with respect to some other factor in doubt (e.g., prospective employment or housing), better their chances for release. To the inmate the Parole Board's decisions are a form of *arcana imperii*. His liberty appears to depend entirely on the whim, hunch or caprice of panel members. He is left to speculate as to why he was denied parole. * * * Besides breeding needless frustration, hatred, cynicism and disrespect for government institutions, the Board's failure to give reasons often induces feelings of hopelessness or despondency which lead inmates no longer to care about making any effort to improve themselves. Indeed,

prison disturbances have been attributed to grievances based on unexplained denials of parole." *United States ex rel. Johnson v. Chairman, New York State Bd. of Parole*, 500 F.2d 925, 932-33 (2d Cir. 1974), vacated and remanded as moot *sub nom. Regan v. Johnson*, 419 U.S. 1015, 95 S.Ct. 488, 42 L.Ed.2d 289 (1974).[9]

A second reason which very much concerns this court is the prevention of arbitrary decisions by the Parole Board. We recognize that the board is a body that makes difficult decisions by weighing a number of factors of varying importance. The members of the board have, through their experience working with a steady flow of parole applications, developed a broad expertise in predicting the likely "success" of prospective parolees. However, as a legislatively created body, they are responsible to the specific legislative mandates of chapter 8 of title 13.

While we have every confidence that the board carries out its duties faithfully according to statutory direction, we do not believe that it should be entirely exempt from judicial review.[10] A written statement of reasons for de-

---

[9] Although this case has been vacated as moot and is therefore of no precedential value, a number of other jurisdictions agree with its reasoning. *See Bradford v. Weinstein*, 519 F.2d 728 (4th Cir. 1974), vacated and remanded for dismissal as moot, 423 U.S. 147, 96 S.Ct. 347, 46 L.Ed.2d 350 (1975); *Childs v. United States Bd. of Parole*, 511 F.2d 1270 (D.C. Cir. 1974); *Monks v. New Jersey State Parole Bd.*, 58 N.J. 238, 277 A.2d 193 (1971). *Contra, Brown v. Lundgren*, 528 F.2d 1050 (5th Cir. 1976). *See generally* Note: *Procedural Due Process in Parole Release Proceedings— Existing Rules, Recent Court Decisions, and Experience in the Prison*, 60 Minn.L.Rev. 341 (Jan. 1976); Comment: *Statement of Reasons for Denial of Parole*, 1974 Wash. U.L.Q. 752 (1974). We also note that New York State has amended its parole law to include the requirement of a written statement of facts and reasons for denial of parole. N.Y. Correction Law §214(6) (McKinney 1968), as enacted by L. 1975, ch. 131, §1.

[10] *Cf.* G.L. 1956 (1969 Reenactment) §42-35-18(b)(3), exempting Parole Board proceedings from the provisions of the Rhode Island Administrative Procedures Act which would require a written statement of reasons for decisions, Parole Board proceedings being "non-adversary" in nature.

cisions would facilitate judicial review and ensure the fact that the board does not stray from its proper functions or act contrary to law.

> "The deference owed to an expert tribunal cannot be allowed to slip into a judicial inertia which results in the unauthorized assumption by an agency of major policy decisions properly made by Congress." *American Ship Bldg. Co.* v. *NLRB*, 380 U.S. 300, 318, 85 S.Ct. 955, 967, 13 L.Ed.2d 855, 867 (1965).

This would also ensure that the board consider only relevant factors and did not get sidetracked by improper criteria or unfavorable publicity, and thus carried out the legislative mandate.

> "The compulsion upon the decisionmaker to set forth the reasons in each case of denial of parole, with some specificity, 'promotes thought by the decider' and impels him to 'cover the relevant points.'" *Haymes* v. *Regan*, 525 F.2d 540, 544 (2d Cir. 1975).

While we are cognizant of the great burdens placed on the Parole Board in merely processing the many applications, we feel that requiring written reasons for decisions refusing parole would not be a very onerous additional burden,[11] particularly in light of the prisoners' strong interest in receiving such information. Therefore, to satisfy minimum standards of due process, accompanying any parole denial should be a statement of reasons sufficient to enable a reviewing court to determine if parole has been denied for permissible reasons. The grounds for the decision and the underlying factors supporting those grounds should be the essential elements of the statement of reasons.

Finally we come to the reasons that were actually given by the board in denying defendant Ouimette's parole ap-

---

[11] General Laws 1956 (1969 Reenactment) §13-8-24, as amended by P. L. 1972, ch. 163, §9 already requires that written reports for all applications considered be filed with the director of corrections.

plications (see note 1, *supra*). We reject defendant's contention that his past criminal record and the seriousness of his crime are irrelevant factors not to be considered by the Parole Board. Past criminal conduct and the seriousness of the crime are certainly factors to be considered in determining likelihood of future lawful behavior. *See Roach* v. *Board of Pardons & Parole,* 503 F.2d 1367 (8th Cir. 1974). However, despite the fact that the board appears to follow the general course of the criteria set out in §13-8-14, it does not seem to be specific enough in its reasons to apprise defendant of the factors considered in denying him parole.

Therefore, the Parole Board should give the defendant an opportunity to renew his parole application and receive a decision based on the standards herein set forth.

The defendant's appeal is sustained and the case is remanded to Superior Court with instructions to order the Parole Board to grant the defendant a new hearing with procedures consistent with this opinion.

Mr. Chief Justice Bevilacqua did not participate.

*Julius C. Michaelson,* Attorney General, *Judith Romney Wegner,* Special Asst. Attorney General, for plaintiff.

*Bevilacqua & Cicilline, John F. Cicilline,* for defendant.