David HIGHAM

v.

STATE of Rhode Island.

No. 2011–87–Appeal.

Supreme Court of Rhode Island.

June 28, 2012.

Jodi M. Gladstone, Esq., for Applicant.

Virginia M. McGinn, Department of Attorney General, for State.

Present: SUTTELL, C.J., GOLDBERG, FLAHERTY, ROBINSON, and INDEGLIA, JJ.

## OPINION

Justice FLAHERTY, for the Court.

David Higham (Higham or applicant) has appealed from a Superior Court judgment denying his second application for postconviction relief. This case came before the Supreme Court on April 4, 2012, for oral argument pursuant to an order directing the parties to show cause why the issues raised in this appeal should not summarily be decided. After reviewing the record and considering the written and oral submissions of the parties, we conclude that this appeal may be resolved without further briefing or argument. For the reasons set forth in this opinion, we affirm the judgment of the Superior Court.

## I

### Facts and Travel

In the summer of 2000, a jury found that applicant committed two acts of first-degree child molestation against the seven-year-old daughter of his stepson. A judgment of conviction was entered on January 10, 2003; the trial justice then sentenced applicant to concurrent terms of forty years on each count, with twenty years to serve and twenty years suspended, with probation. The underlying facts of this case are set forth in detail in *State v. Higham*, 865 A.2d 1040 (R.I.2004), in which this Court affirmed the convictions of applicant.

On May 1, 2006, Higham filed a *pro se* application for postconviction relief in the Superior Court, alleging ineffective assistance of counsel. Counsel was appointed to represent him, but on November 18, 2008, appointed counsel filed a motion to withdraw. In his motion, counsel indicated that the application was "wholly frivolous" and without merit.[1] Even though the motion to withdraw was pending, counsel appeared with applicant at a hearing in Superior Court. At the conclusion of the hearing, a stipulation, signed by both applicant and his attorney was entered on December 5, 2008. The stipulation provided that the motion for postconviction relief would be dismissed *with prejudice* in exchange for a reduction in sentence approved by the hearing justice.[2]

---

1. "In *Shatney v. State*, 755 A.2d 130 (R.I. 2000), this Court outlined a procedure whereby court-appointed counsel, after reaching the conclusion that an application for postconviction relief lacks merit, may seek to withdraw during a postconviction relief proceeding." *State v. Laurence*, 18 A.3d 512, 518 n. 5 (R.I. 2011) (quoting *Thornton v. State*, 948 A.2d 312, 313 n. 2 (R.I.2008)).

2. The trial justice reduced applicant's sentence to concurrent terms of thirty-eight years on each count, with eighteen years to serve and twenty years suspended, with probation.

On March 18, 2009, applicant appeared before the parole board seeking an early release from incarceration. The parole board denied applicant's bid for parole because he refused to acknowledge his crime and because he had not completed the sex-offender-treatment program (SOTP). On September 25, 2009, applicant filed a second application for postconviction relief, this time *pro se*. In this new application, Higham alleged: (1) parole had been unlawfully denied to him; (2) jury misconduct; and (3) actual innocence. Higham also filed an array of other documents with the court, including a stipulation indicating his *pro se* status, a motion to appoint counsel, a writ of habeas corpus ad testificandum, a motion to assign, and a motion to proceed *pro se*. A hearing on applicant's second application for postconviction relief was held on October 30, 2009. At the conclusion of the hearing, the application was denied. The applicant timely has appealed to this Court.

## II

### Standard of Review

 General Laws 1956 § 10–9.1–1 creates a postconviction remedy "available to any person who has been convicted of a crime and who thereafter alleges either that the conviction violated the applicant's constitutional rights or that the existence of newly discovered material facts requires vacation of the conviction in the interests of justice." *DeCiantis v. State*, 24 A.3d 557, 569 (R.I.2011) (quoting *Page v. State*, 995 A.2d 934, 942 (R.I.2010)). "An applicant for such relief bears '[t]he burden of proving, by a preponderance of the evidence, that such relief is warranted' in his or her case." *Brown v. State*, 32 A.3d 901, 907 (R.I.2011) (quoting *State v. Laurence*, 18 A.3d 512, 521 (R.I.2011)). When "reviewing the denial of postconviction relief, this Court affords great deference to the hearing justice's findings of fact and will not disturb his or her ruling 'absent clear error or a showing that the [hearing] justice overlooked or misconceived material evidence.'" *Id.* at 907–08 (quoting *Page*, 995 A.2d at 942).

## III

### Analysis

The applicant raises three issues on appeal, arguing: (1) that he was entitled to be represented by counsel at his second postconviction-relief hearing, (2) that the hearing justice erred when he refused to review the denial of parole in the context of a postconviction-relief proceeding, and (3) that the hearing justice erred when he found that consideration of the allegations of "actual innocence" and "jury taint" were barred by *res judicata*.

### A. Right to Counsel at Second Postconviction–Relief Hearing

With respect to the first issue, applicant contends that he should have been provided counsel at his second postconviction-relief proceeding. On September 25, 2009, applicant filed a second application for postconviction relief accompanied by a motion to appoint counsel. Concomitantly, applicant filed a stipulation that he was proceeding *pro se*, reinforced by a motion to proceed *pro se*.

The applicant now alleges that the hearing justice erred because he declined to appoint counsel, even in the face of the fact that applicant had filed a motion to proceed *pro se* along with a stipulation alerting the court that he was *pro se*. To support his argument, applicant cites *Bryant v. Wall*, 896 A.2d 704, 708 (R.I. 2006). In *Bryant*, the applicant was pursuing his first application for postconviction relief, alleging that he had received

ineffective assistance of counsel at his trial. *Id.* at 706. Despite the fact that it was the applicant's first application for postconviction relief, we held that "[b]ecause a person may waive his constitutional right to counsel in a criminal case, we see no reason to question his right to waive his statutory right to counsel in a civil case." *Id.* at 709. In light of that holding, we can divine no earthly reason why the right to appointed counsel cannot be waived in a successor application.

The applicant also maintains that the hearing justice ran afoul of the mandates of *Shatney v. State,* 755 A.2d 130 (R.I. 2000). He argues that the hearing justice failed to comply with the requirements of *Shatney* in this second application for postconviction relief because he did not have the benefit of appointed counsel and he was not provided with an opportunity to respond to the dismissal of his application. *Shatney* requires that a postconviction-relief applicant "is entitled either to a hearing on his application or to a judicial determination that his appointed counsel's no-merit conclusion entitles that attorney to withdraw * * *." *Id.* at 136.

■ After reviewing the transcript from the postconviction-relief hearing, we are satisfied that applicant was afforded "a hearing on his application" in accordance with *Shatney. See Shatney,* 755 A.2d at 136. At the hearing, the justice considered and reviewed two of the allegations applicant raised.[3] After the state responded to applicant's contentions, the hearing justice provided applicant an opportunity to respond to what had been said by the state and the court. Therefore, we see no merit to this argument advanced by applicant. *See Sosa v. State,* 949 A.2d 1014, 1017 (R.I.2008); *see also Otero v. State,*

996 A.2d 667, 671 (R.I.2010) (denying a contention that there was a procedural defect in a postconviction-relief hearing during which the hearing justice asked the applicant whether he had any questions about what was said at the hearing and then gave the applicant an opportunity to be heard on the claims thereafter dismissed).

■ We are hard-pressed to assign error to the hearing justice's decision to allow applicant to proceed *pro se* in accordance with the motion that he himself had filed with the court. In addition, the fact that applicant failed to alert the Superior Court justice to the fact that he desired to be represented by counsel at any time during the hearing leads us to conclude that no error was committed by the hearing justice.

## B. Wrongful Denial of Parole

■ The applicant next contends that the hearing justice erred when he refused to review the actions of the parole board in the context of a postconviction-relief proceeding. The state concedes that the hearing justice did not consider the denial of parole issue, and it acknowledges that postconviction relief is the proper procedure for an applicant to raise objections to parole board decisions.

Statute and case law provide that a postconviction-relief proceeding is the proper vehicle for raising limited objections to parole board proceedings. Section 10-9.1-1(a)(5); *State v. Ouimette,* 117 R.I. 361, 363, 367 A.2d 704, 706 (1976); *see also Estrada v. Walker,* 743 A.2d 1026, 1027 (R.I.1999) (where applicant challenged denial of parole in a postconviction-relief proceeding). In our opinion, it was error for

---

**3.** As discussed *infra,* the hearing justice did not consider applicant's allegation that he

was unlawfully denied parole.

the hearing justice to conclude that post-conviction relief was not the appropriate vehicle for reviewing a denial of parole. *See Ouimette,* 117 R.I. at 363, 367 A.2d at 706; *see also* § 10–9.1–1(a)(5).

■ However, it is also our opinion that the parole board record is so clear that there is no need to remand this case to the Superior Court. We will consider applicant's argument in light of the record and determine for ourselves whether the parole board abused its discretion when it denied applicant's request for parole.

■ The applicant maintains that he was "unlawfully denied parole on March 18, 2009 for not participating in the [SOTP] and for not admitting guilt." Specifically, applicant argues that the board did not follow the law and that it "used unlawful board policy to circumvent the law in its denial of [parole]." The applicant also maintains that the parole board violated his fundamental rights, due process rights, the parole board statute, and applicant's liberty interests.

■ We have declared that "there is no 'constitutional or inherent right' to parole[.]" *Estrada,* 743 A.2d at 1031 (quoting *Bishop v. State,* 667 A.2d 275, 278 (R.I.1995)). Parole applicants are entitled only to "an opportunity to be heard and to be informed in what respects the applicant falls short of qualifying for parole." *Id.* (quoting *Bernard v. Vose,* 730 A.2d 30, 32 (R.I.1999) (mem.)).

The applicant went before the parole board on March 18, 2009. At that parole board hearing, the following colloquy took place between applicant, applicant's counsel, and a member of the parole board:

"[Dr. Walker]: [The] first question is [has] your client taken part in any programs? How about * * * the sex offender program * * *?

* * *

"[Attorney]: He has not taken part in that Dr. Walker. * * * I can tell you the reasons. * * * Now, I am aware that, [the] sex offender program, as I refer to it * * * requires an admission of guilt, and why did they, why he or she committed the crime that they committed, specifically * * * against a juvenile.

"[Dr. Walker]: Not taking part in the sex offenders program, having * * * been found guilty, there's no way that this [b]oard is [going] to look favorably [upon] your client at this time * * * there is no way [he will] be paroled at this time.

"[Attorney]: So if I might be able [to] translate for him, Dr. Walker, that, to be considered for parole, where, let's say * * * this board would be looking for him to have not only made the admission of uh, his guilt, which is required by this program, but had the benefit of that program, as well. Do you understand that, David?

"[Applicant]: Mm hm.

"[Attorney]: I think they explained themselves adequately to you. Do you have any questions?

"[Applicant]: None whatsoever."

The parole board hearing minutes included a straightforward and precise statement of the reasons for the denial of parole:

"The [b]oard vote is to deny parole. The reason for this denial is Mr. Higham has not admitted to his crime and he refuses to take part in the Sex Offender Treatment Program."

■ The applicant was represented by counsel at the parole board hearing. After learning of the reasons for the parole board's denial, applicant's counsel took the time to ensure that the record reflected that applicant fully understood the reasons for the denial of parole. In our view, the

parole board gave applicant a valid reason for denying parole, and also gave applicant an opportunity to respond, but applicant declined. *See Estrada,* 743 A.2d at 1031; *Ouimette,* 117 R.I. at 372, 367 A.2d at 710; *see also State v. Tillinghast,* 609 A.2d 217, 218 (R.I.1992).

Higham's assertion that the parole board abused its discretion because it refused to grant him parole until he successfully attended the SOTP is without merit. The parole board acted within its broad discretion for the purpose of ensuring "a reasonable probability that the prisoner, if released, [will] live and remain at liberty without violating the law." G.L.1956 § 13–8–14(a)(3). Sound policy considerations reinforce the reason the parole board has been granted such expansive discretion. As this Court has declared:

> "The state, and society in general, also have important interests which are affected by parole release proceedings. The prospective parolee has been convicted of a crime and sentenced to a period of imprisonment to punish and rehabilitate him, to protect society from his antisocial behavior and to deter and discourage this type of behavior in the future." *Ouimette,* 117 R.I. at 367–68, 367 A.2d at 708.

We previously have been confronted with the question of whether the parole board acted within its discretion when it denied parole to a sex offender who refused to continue participating in the aforementioned SOTP. *Bernard,* 730 A.2d at 33. There, we unequivocally concluded that "the board acted well within its expansive discretion in denying parole to [the applicant] * * * because of his refusal to continue participating in the [SOTP]." *Id.* We can discern no difference between the issue raised by the applicant in *Bernard* and that presented by applicant in the case at bar.

It is evident that applicant was provided with the requisite process that is due in the context of a parole board hearing. He was given the opportunity to be heard and was provided with a succinct explanation of why he was being denied parole. Despite applicant's argument to the contrary, the parole board acted well within its broad discretion when it denied him parole because of his refusal to participate in the SOTP. The applicant's challenge to the parole board's decision is without merit, and, based on our independent review, we deny his postconviction-relief application on this ground.

### C. Actual Innocence and Jury Misconduct Claims

The applicant's third argument is that the hearing justice erroneously denied his claim for postconviction relief because he actually was innocent of the crimes of which he was accused and because of juror misconduct that he alleges occurred during his trial. The hearing justice denied relief on both grounds, finding that the doctrine of *res judicata* applied to both claims.

 Section 10–9.1–8 codifies the doctrine of *res judicata* within the postconviction-relief context. "For *res judicata* to apply, the following four elements must be established: '(1) identity of the parties; (2) identity of the issues; (3) identity of the claims for relief; and (4) finality of the judgment.'" *Laurence,* 18 A.3d at 522 (quoting *Ouimette v. State,* 785 A.2d 1132, 1138 (R.I.2001)). "The doctrine of res judicata operates as an absolute bar to relitigation of the same issues between the same parties when a final judgment has been rendered." *Carillo v. Moran,* 463 A.2d 178, 182 (R.I.1983).

 Here, applicant has attempted to resurrect a claim that, at the relevant time, he had a communicable disease, evi-

dence of which should have been introduced at trial to prove his innocence. There can be no sensible dispute that the hearing justice appropriately found that three of the four required elements of *res judicata* existed between applicant's first and second postconviction-relief applications: the parties are the same, the request for relief is the same, and a final judgment was entered.[4] The only question that remains is whether or not the hearing justice was correct when he found that an identity of the issues existed in the first and second applications for postconviction relief. *See Laurence,* 18 A.3d at 522.

In his first application for postconviction relief, applicant claimed that he received ineffective assistance of counsel because his trial attorney failed to investigate his contention that he allegedly had contracted a communicable disease around the time that the state alleged the molestation occurred and that, therefore, if the alleged unlawful sexual contact actually had occurred, the complaining witness also would have contracted the disease.

In this second application for postconviction relief, applicant now avows his actual innocence, based on "medical diagnosis and medical findings." Although cloaked in a different title, applicant asserts the same argument as he pressed in his first postconviction—relief application—that he had contracted a highly communicable disease and that the victim also would have contracted the disease if the abuse had occurred in the way that the state alleged.

After reviewing the two applications, we conclude that because the two arguments are essentially the same and based on the

same facts, the actual innocence claim is "substantially identical" to the claim raised in applicant's first application for postconviction relief. *See Laurence,* 18 A.3d at 522 (describing the two claims as "inextricably interwoven"). Therefore, we agree with the hearing justice's determination that applicant's actual-innocence claim was barred by the doctrine of *res judicata.*

Lastly, applicant argued that there had been inappropriate discussion among the jurors during the trial, and, therefore, a mistrial should have been granted. The hearing justice addressed this argument and ruled that it, too, was barred by the doctrine of *res judicata.* As we said in *Ferrell v. Wall,* 971 A.2d 615, 621 (R.I.2009):

> "The applicant could have and indeed should have raised this issue in his first application for postconviction relief. His failure to raise this allegation at that time results in a bar to the litigation of that issue and that claim for relief. This Court has not heard from [the] applicant, nor can it glean from the record, a valid reason why this issue was not raised in the first application for postconviction relief."

Higham has conceded that his trial attorney was made aware of the allegations of jury misconduct and that, in fact, the trial justice addressed the issue in open court. Because the applicant failed to raise this issue on direct appeal or in his first application for postconviction relief, he is barred from pursuing this argument

---

4. Despite applicant's argument that he merely entered into a "plea agreement," it is clear that a final judgment was entered on the merits when applicant voluntarily withdrew his first application for postconviction relief *with prejudice* in exchange for a reduction of his sentence. *See Lennon v. Dacomed Corp.,*

901 A.2d 582, 592 (R.I.2006) ("[A] '[d]ismissal with prejudice * * * constitutes a full adjudication of the merits as if the order had been entered subsequent to trial.'" (quoting *School Committee of North Providence v. North Providence Federation of Teachers Local 920,* 122 R.I. 105, 109, 404 A.2d 493, 495 (1979))).

based on the doctrine of *res judicata.* *See* *Ferrell,* 971 A.2d at 621.

### IV

### Conclusion

For the reasons set forth in this opinion, we affirm the judgment of the Superior Court. The record in this case may be remanded to the Superior Court.