June 7, 2018

**Supreme Court**
No. 2015-323-Appeal.
(PM 14-3816)

Leonard Jefferson      :

v.      :

State of Rhode Island.      :

NOTICE:    This opinion is subject to formal revision before publication in the Rhode Island Reporter.  Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

**Supreme Court**
No. 2015-323-Appeal.
(PM 14-3816)
Concurrence and Dissent
begins on page 10
Dissent begins on page 11

Leonard Jefferson          :

v.                         :

State of Rhode Island.     :


Present:  Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

**O P I N I O N**

**Justice Robinson, for the Court.**  The petitioner, Leonard Jefferson, appeals[1] from the June 2, 2015 denial of his application for postconviction relief in Providence County Superior Court.  He contends before this Court that the hearing justice erred in denying his application for postconviction relief because, in petitioner's view, the *ex post facto* clause of the United States Constitution was violated when his parole was revoked and he was denied the possibility of parole in the future pursuant to G.L. 1956 § 13-8-14(b).  He further avers that the separation of powers doctrine as well as his right to be free from double jeopardy were also violated when he was denied the possibility of parole; and he further argues that his due process rights were violated when his parole was revoked.

---

[1]     The General Assembly has amended G.L. 1956 § 10-9.1-9 so as to require a party aggrieved by a final judgment entered in a postconviction relief proceeding to seek review by filing a petition for a writ of certiorari with this Court.  *See* P.L. 2015, ch. 91, § 1; P.L. 2015, ch. 92, § 1.  That amendment went into effect on June 19, 2015. The notice of appeal in this case was docketed in the Superior Court on June 19, 2015.  To the extent that it may be necessary, we are hereby treating the instant appeal as a petition for the issuance of a writ of certiorari, and we are granting that petition.

For the reasons set forth in this opinion, we vacate the judgment of the Superior Court.

# I

## Facts and Travel

On October 4, 1974, petitioner was convicted in Providence County Superior Court of murder in violation of G.L. 1956 § 11-23-1. He was sentenced to life imprisonment. This Court affirmed his conviction in *State v. Jefferson*, 116 R.I. 124, 353 A.2d 190 (1976). We refer the interested reader to that opinion for a detailed recitation of the facts underlying Mr. Jefferson's original murder conviction. We will restrict ourselves to only those facts which are relevant to the case before us. In setting forth said facts, we rely primarily on Mr. Jefferson's application for postconviction relief and the attachments thereto.

On June 2, 1976, after Mr. Jefferson's 1974 murder conviction, the General Assembly amended the parole statutes to include the following language, which remains in the current version of the statute:

> "[I]n the case of a prisoner sentenced to imprisonment for life who is released on parole and who is subsequently convicted of a crime of violence as defined in section 11-47-2,[2] said conviction shall

---

[2]     General Laws 1956 § 11-47-2 provides in pertinent part as follows:

> "'Crime of violence' means and includes any of the following crimes or an attempt to commit any of them: murder, manslaughter, rape, first or second degree sexual assault, first or second degree child molestation, kidnapping, first and second degree arson, mayhem, robbery, burglary, breaking and entering, any felony violation involving the illegal manufacture, sale, or delivery of a controlled substance, or possession with intent to manufacture, sell, or deliver a controlled substance classified in schedule I or schedule II of § 21-28-2.08, any violation of § 21-28-4.01.1 or 21-28-4.01.2 or conspiracy to commit any violation of these statutes, assault with a dangerous weapon, assault or battery involving grave bodily injury, and/or assault with intent to commit any offense punishable as a felony; upon any conviction of an offense punishable as a felony offense under § 12-29-5."

- 2 -

> constitute an automatic revocation of parole and the prisoner shall not be eligible for parole thereafter." P.L. 1976 ch. 223 § 2; *see also* § 13-8-14(b).

Subsequently, in January of 1986, Mr. Jefferson was granted parole. He was thereafter arrested in Pennsylvania and, on May 18, 1994, was convicted in that commonwealth of one count of aggravated assault, for which he served a twenty-year prison term.

On December 13 and December 29, 1993, after Mr. Jefferson's Pennsylvania arrest, but before his conviction, a preliminary parole revocation hearing was held in Pennsylvania with respect to determining whether or not, as a result of his Pennsylvania arrest, there was probable cause that he had violated his parole related to his Rhode Island sentence. Thereafter, on November 10, 1994, after Mr. Jefferson's Pennsylvania conviction and while he was serving his sentence in Pennsylvania, the Rhode Island Parole Board held a final parole revocation hearing and voted to revoke his parole and indicated, in the minutes from that hearing, that he would "no longer be eligible for parole * * *." In November of 2013, upon completion of his prison term in Pennsylvania, petitioner was transported to the Adult Correctional Institutions in Rhode Island. On April 14, 2014, Mr. Jefferson appeared before the Parole Board for what appears to have been a second final parole revocation hearing; there is no indication in the record that he was represented by counsel at that time. The Parole Board voted to affirm the above-referenced revocation of Mr. Jefferson's parole and, according to his application for postconviction relief presently at issue, informed him that he "is and forever will remain ineligible for parole-consideration." Mr. Jefferson represents, in his application for postconviction relief, and the state does not contest, that the basis of the Parole Board's decision that he will remain ineligible for parole was the mandate contained in § 13-8-14(b).

Mr. Jefferson filed the instant *pro se* application for postconviction relief on July 1, 2014. He alleged therein that the Parole Board's reliance on § 13-8-14(b) was "improper and unconstitutional * * *." Specifically, he contended that he had not been convicted of any offense listed under G.L. 1956 § 11-47-2. He further contended that his due process rights under *Morrissey v. Brewer*, 408 U.S. 471 (1972), were violated during the revocation proceedings.

On April 1, 2015, Mr. Jefferson's court-appointed counsel (having entered his appearance on October 1, 2014) filed both a motion to withdraw as counsel[3] and a memorandum in support of that motion pursuant to this Court's opinion in *Shatney v. State*, 755 A.2d 130 (R.I. 2000);[4] the grounds for the motion to withdraw were that the issues raised in petitioner's application for postconviction relief were "wholly frivolous, and not supported by existing law, or by a good faith basis for the reversal, extension, or modification of existing law * * *." On April 14, 2015, a hearing was held on court-appointed counsel's motion to withdraw, in the course of which hearing the hearing justice granted the motion. Subsequently, on April 29, 2015, Mr. Jefferson filed an "Objection to Defense Counsel's Shatney Memorandum." On June 2, 2015, a second hearing was conducted, at which Mr. Jefferson appeared *pro se*; at the close of that hearing, Mr. Jefferson's application for postconviction relief was denied. He filed a notice of appeal on June 19, 2015.

---

[3]     The docket sheet reflects the fact that a motion to withdraw was filed on April 1, 2015, but only a copy of the memorandum in support of the motion is contained in the record.

[4]     We take this opportunity to note our continuing concern with respect to the way our decision in *Shatney v. State*, 755 A.2d 130 (R.I. 2000), has been implemented. In our judgment, too often court-appointed counsel are overly ready to simply file a motion to withdraw and are not providing applicants for postconviction relief the kind of inquiry into the record, research of potential grounds for the grant of postconviction relief, and zealous representation to which they are entitled. While we hold the issue in abeyance at this time, we have grave doubts as to the continuation of the procedure provided for in *Shatney*. We tend to think that, as it has been administered, it has become untenable.

## II

## Standard of Review

When passing on a hearing justice's denial of an application for postconviction relief, "this Court accords great deference to the hearing justice's findings of fact." *Lynch v. State*, 13 A.3d 603, 605 (R.I. 2011). As such, "[t]his Court will uphold the decision absent clear error or a determination that the hearing justice misconceived or overlooked material evidence." *Id.* (internal quotation marks omitted). That being said, we will review "de novo any questions of law or fact pertaining to an alleged violation of an applicant's constitutional rights." *Id.*

## III

## Analysis

We need not address each of Mr. Jefferson's contentions before this Court due to the fact that, in our judgment, it was error to deny him representation of counsel and his "opportunity to be heard in person" when the Parole Board voted to revoke his parole on November 10, 1994. *Morrissey*, 408 U.S. at 489. Moreover, in our opinion, his right to counsel under the specific circumstances of this case was also not provided to him at the April 14, 2014 hearing before the Parole Board, at which the Parole Board affirmed the denial of his parole.[5]

---

[5] We note, initially, that there is no issue as to waiver with respect to Mr. Jefferson's contention that his due process rights were violated. He clearly raised the violation of his due process rights in his application for postconviction relief, and he specifically cited *Morrissey v. Brewer*, 408 U.S. 471 (1972), in that same application.

We deem it prudent to add that, in our judgment, Mr. Jefferson's contention in his *pro se* application for postconviction relief that his constitutional rights were violated, and his mention of due process specifically, are sufficient, on the specific facts of the instant case, to preserve his contention that the *ex post facto* clause of the United States Constitution was violated when his parole was revoked and he was denied the possibility of parole in the future. We take no position on the merits of that contention at this time.

The United States Supreme Court in *Morrissey*, 408 U.S. at 489, set forth what is minimally necessary to comply with the requirements of the due process clause of the Fourteenth Amendment of the United States Constitution in the context of parole revocation. For the purposes of this opinion, we will focus only on the requirements set forth therein with respect to the final revocation hearing, as those are the pertinent requirements for this case.[6] It appears from the facts of this case that, after Mr. Jefferson's preliminary parole revocation hearing, which took place on December 13 and December 29, 1993, he was in essence given two final parole revocation hearings on November 10, 1994 and April 14, 2014. The United States Supreme Court in *Morrissey* stated that, for a final parole revocation hearing, the minimum requirements of due process are as follows:

> "(a) written notice of the claimed violations of parole; (b) disclosure to the parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a 'neutral and detached' hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking parole." *Morrissey*, 408 U.S. at 489.

It necessarily follows that Mr. Jefferson was entitled to each of the just-quoted requirements at his final parole revocation hearings.

---

[6] The United States Supreme Court in *Morrissey*, 408 U.S. at 485-87, also set forth the requirement of a preliminary hearing and specific details as to the requirements of due process at such a hearing. We acknowledge that, in his *pro se* application for postconviction relief, Mr. Jefferson referenced what he contended were errors at his preliminary hearing, which took place on December 13 and December 29, 1993 in Pennsylvania. However, before this Court he restricts his argument to the final parole revocation hearings, and we will likewise restrict our review to those hearings. *See Rice v. State*, 38 A.3d 9, 16 n.10 (R.I. 2012) ("We note that this Court will deem as waived issues that the appellant fails to brief * * *.").

However, in *Morrissey*, the Supreme Court specifically opted not to pass on "the question whether the parolee is entitled to the assistance of retained counsel or to appointed counsel if he is indigent." *Id.* The United States Supreme Court has never held that a parolee is entitled in every case to representation by an attorney at a final parole revocation hearing; rather, that Court has held that "the decision as to the need for counsel must be made on a case-by-case basis in the exercise of a sound discretion by the state authority charged with responsibility for administering the probation and parole system." *Gagnon v. Scarpelli*, 411 U.S. 778, 790 (1973).[7] The Supreme Court went on to explain that "[a]lthough the presence and participation of counsel will probably be both undesirable and constitutionally unnecessary in most revocation hearings, there will remain certain cases in which fundamental fairness—the touchstone of due process—will require that the State provide at its expense counsel for indigent probationers or parolees." *Id.* The Supreme Court further stated, in *Gagnon*, that:

> "Presumptively, it may be said that counsel should be provided in cases where, after being informed of his right to request counsel, the probationer or parolee makes such a request, based on a timely and colorable claim * * * that, even if the violation is a matter of public record or is uncontested, there are substantial reasons which justified or mitigated the violation and make revocation inappropriate, and that the reasons are complex or otherwise difficult to develop or present." *Gagnon*, 411 U.S. at 790; *see also*

---

[7]  Subsequent to the Supreme Court's opinion in *Gagnon v. Scarpelli*, 411 U.S. 778 (1973), Congress passed the United States Parole Commission and Reorganization Act, Pub. L. No. 94-233, 90 Stat. 228 (1976), which requires representation by an attorney at a parole revocation hearing if the parolee so desires. *See Jones v. State*, 560 A.2d 1056, 1057 n.1 (Del. 1989). Despite the passage of said act, *Gagnon* remains good law with respect to whether or not the United States Constitution requires the opportunity to be represented by counsel at a final parole revocation hearing. It is further noteworthy that the Supreme Court has reaffirmed the holding in *Gagnon* in more recent cases. *See Turner v. Rogers*, 564 U.S. 431, 443 (2011) ("[T]he Court has held that a criminal offender facing revocation of probation and imprisonment does *not* ordinarily have a right to counsel at a probation revocation hearing.") (emphasis in original) (citing *Gagnon*, 411 U.S. at 790); *Black v. Romano*, 471 U.S. 606, 612 (1985) ("[T]he probationer has a right to the assistance of counsel in some circumstances.") (citing *Gagnon*, 411 U.S. at 790).

*United States v. Dodson*, 25 F.3d 385, 388-89 (6th Cir. 1994); *Gibbs v. State*, 760 A.2d 541, 543 (Del. 2000); *Walker v. Forbes*, 790 S.E.2d 240, 244 (Va. 2016).

We consider to be noteworthy the United States Supreme Court's explicit acknowledgment in *Gagnon* that there will arise some cases whose complexity calls for providing counsel to a parolee at a parole revocation hearing. In our judgment, the instant case is on its face one of particular factual and legal complexity, and it is our view that in this case petitioner should be represented by counsel before the Parole Board if he so chooses. *See Gagnon*, 411 U.S. at 789 ("The need for counsel at revocation hearings derives, not from the invariable attributes of those hearings, but rather from *the peculiarities of particular cases*.") (emphasis added). We expressly refrain from formulating any broader rule in these premises; we restrict ourselves to the case at hand. In support of our conclusion, we note that, according to the several letters Mr. Jefferson attached to his "Objection to Defense Counsel's Shatney Memorandum," he specifically requested counsel, in writing and on more than one occasion, prior to the April 14, 2014 hearing before the Parole Board. In support of his request for an attorney, Mr. Jefferson cited the fact that he was contending that he had been "wrongly convicted of [the] 'trigger' offense;" he further cited the "complex issues involved" in the case, and he made specific mention of the applicability of § 13-8-14(b).

It is clear from the record that, when the Parole Board first revoked Mr. Jefferson's parole on November 10, 1994, at his first final parole revocation hearing, he was not "heard in person" because he was incarcerated in Pennsylvania at the time, nor was he represented by counsel in connection with his parole revocation. *Morrissey*, 408 U.S. at 489. Consequently, it does not appear that Mr. Jefferson's due process rights, detailed in *Morrissey*, and his right to an attorney, recognized in *Gagnon*, were complied with at the time of the initial revocation of his

parole by the Rhode Island Parole Board in 1994. Moreover, after Mr. Jefferson completed his sentence in Pennsylvania and was transported back to Rhode Island, he appeared before the Parole Board for what appears to have been a second final parole revocation hearing, at which appearance the Parole Board affirmed the revocation of his parole. There is no indication that he was represented by counsel at that hearing despite his numerous requests for counsel. It was error for the Parole Board to deny Mr. Jefferson counsel at the April 14, 2014 hearing.

Without addressing the constitutionality of § 13-8-14(b) as applied to Mr. Jefferson, we note that the applicability of § 13-8-14(b) to Mr. Jefferson turns in part on whether the offense for which he was convicted in Pennsylvania (aggravated assault) constitutes "a crime of violence as defined in § 11-47-2." The consequences of this determination are obviously severe—*viz.*, whether Mr. Jefferson will ever be eligible for parole or whether he must serve his life sentence without the possibility of parole. Under these circumstances, we are of the opinion that fundamental fairness and due process require that counsel be provided to him. We deem it error, therefore, for the Parole Board to have denied him counsel at the November 10, 1994 hearing and the April 14, 2014 hearing.

Accordingly, we remand this case to the Superior Court with instructions that it remand the case to the Parole Board to conduct a new parole revocation hearing.

## IV

### Conclusion

For the reasons stated herein and due to the especially complex nature of this case, we vacate the judgment of the Superior Court; and we remand the record to that tribunal with instructions that it remand the case to the Parole Board to conduct a new parole revocation

hearing which complies with the requirements of due process and the right to be represented by counsel if Mr. Jefferson so chooses.

**Chief Justice Suttell, concurring in part and dissenting in part.** Although I concur with the majority's holding to vacate the judgment of the Superior Court, I respectfully dissent from its mandate to remand the case to the Superior Court with instructions that it in turn remand the case to the Parole Board to conduct a new parole-revocation hearing. In my view, the decision to hold a new parole hearing is, at best, premature at this juncture. Significantly, this Court has not been provided with a record of the proceedings before the Parole Board.

Moreover, the Board's discretion was severely constricted under the circumstances of this case. Mr. Jefferson's conviction of aggravated assault in Pennsylvania conclusively establishes the fact that he indeed violated the conditions of his parole. Under the provisions of G.L. 1956 § 13-8-14(b), the conviction automatically triggers his parole revocation and precludes his eligibility for future parole. The only statutory question that must be resolved is whether the Pennsylvania conviction constitutes "a crime of violence as defined in § 11-47-2[.]" Section 13-8-14(b). The ultimate resolution of that issue is a question of law properly cognizable in the Superior Court in the context of a petition for postconviction relief. So too must any constitutional question be resolved by the courts, not by the Parole Board.

I join my dissenting colleague, however, in her assessment that Jefferson was ignominiously "Shatneyed." In the interest of justice, therefore, I would vacate the judgment denying Jefferson's application for postconviction relief and remand the case to the Superior Court for a new hearing with appointed counsel. I further endorse my dissenting colleague's elegy for the procedures this Court adopted in *Shatney v. State*, 755 A.2d 130 (R.I. 2000).

**Justice Goldberg, dissenting.** The majority has erred in this case; it has reached issues of constitutional dimension that were not raised by the parties and are not properly before the Supreme Court or even necessary to our decision, and it has decided them wrongly. The majority's decision amounts to a judicial amendment of the general laws relative to parole revocation, and will adversely affect the orderly procedures of the Parole Board. I am therefore compelled to write separately in an effort, at the very least, to illuminate where the majority opinion has gone off the rails.

**Parole Revocation is Governed by Statute in Rhode Island**

The majority opinion references the minimum due-process requirements for parole-revocation proceedings set forth by the United States Supreme Court in *Morrissey v. Brewer*, 408 U.S. 471 (1972), and declares that Jefferson was entitled to each of those requirements at his final parole hearing and also holds that "it was error to deny [Jefferson] representation of counsel and his 'opportunity to be heard in person' when the Parole Board voted to revoke his parole on November 10, 1994." (Quoting *Morrissey*, 408 U.S. at 489.) The majority opinion ignores the holding in *Morrissey* that procedural guarantees in the parole-revocation context, as mandated by the Due Process Clause, fall upon the states and that at the time *Morrissey* was promulgated, most states already had procedural protections in place. *Id.* at 484. "What is needed is an informal hearing structured to assure that the finding of a parole violation will be based on verified facts and that the exercise of discretion will be informed by an accurate knowledge of the parolee's behavior." *Id.* The concerns in *Morrissey* centered on the potential for arbitrary revocation decisions based on putative violations of the conditions of one's parole. The "discretionary aspect of the *revocation* decision need not be reached unless there is *first* an

appropriate determination that the individual has in fact breached the conditions of parole." *Id.* at 483-84 (emphasis added). The Supreme Court also recognized the public's interest "in not having parole revoked because of erroneous information or because of an erroneous evaluation of the need to revoke parole, given the breach of *parole conditions*." *Id.* at 484 (emphasis added). None of these salutary considerations concern the commission of a new felony crime by the parolee and the statutory consequences of that crime; which is the case before us on appeal.

The appellants in *Morrissey* were returned to prison by the Iowa Board of Parole as parole violators—without a hearing or opportunity to be heard—not for the commission of new criminal offenses, but for alleged violations of the conditions of parole set forth in their parole officers' reports, including, *inter alia*, the unauthorized purchase of a motor vehicle, use of an assumed name to obtain credit and a driver's license, and leaving the territorial limits of the county without consent. *Morrissey*, 408 U.S. at 474. The Supreme Court declared that the liberty interest in remaining on parole was sufficient to require minimum due-process protections. *Id.* at 483-84. The Court was confronted with prisoners who were accused of violating the conditions of their parole, not individuals convicted of violent felony crimes. Notwithstanding this distinction, the overriding emphasis of the Supreme Court as set forth repeatedly in *Morrissey* was the declaration that "there is no thought to equate this second stage of parole revocation to a criminal prosecution in any sense. It is a narrow inquiry * * *. * * * We have no thought to create an inflexible structure for parole revocation procedures." *Id.* at 489, 490. The majority opinion misconstrues the seminal holding in *Morrissey*.

This Court has long recognized "that revocation proceedings must accord the parolee a minimum degree of due-process protection." *Gaze v. State*, 521 A.2d 125, 127 (R.I. 1987). The issues in this case, however, are wholly unrelated to the minimum due-process requirements for

- 12 -

revocation hearings. The majority overlooks the fact that Jefferson's parole and its revocation were governed by the law of the Commonwealth of Pennsylvania and the then-existing Rhode Island "Uniform Act for Out of State Parolee Supervision," under which Jefferson was afforded an evidentiary hearing with the benefit of counsel before he was declared in violation of his parole. Jefferson was then convicted in Pennsylvania of the underlying offense that gave rise to the violation, and sentenced to twenty years imprisonment. This conviction and sentence, of course, obviated any due-process requirement for a prompt resolution of the parole revocation issue. *See Moody v. Daggett*, 429 U.S. 78, 85 n.7 (1976) (criminal conviction serves to eliminate the need for a preliminary parole-revocation hearing as required by *Morrissey* because the conviction supplies the parole authority with the requisite probable cause to believe parolee committed acts that would constitute a violation of the conditions of his or her parole).

In 1994, when the Parole Board voted to revoke Jefferson's parole, Jefferson had been found guilty in Pennsylvania, beyond a reasonable doubt, of the offense of aggravated assault, an offense classified as a violent felony crime. Despite the finality of this criminal conviction, the majority decrees, *sua sponte*, that *in 1994*, *while incarcerated in Pennsylvania*, in accordance with the Uniform Act, the Due Process Clause of the United States Constitution mandated that Jefferson was entitled to be provided with, *inter alia*, written notice of the claimed violation and the evidence against him, as well as an opportunity to be heard *in person*, present witnesses and documentary evidence, and confront and cross-examine the witnesses against him. The majority has declared, without any analysis, that the Due Process Clause mandates that Jefferson be afforded the opportunity to relitigate the merits of the Pennsylvania conviction. The majority is incorrect. This holding misconstrues the Supreme Court's jurisprudence and this Court's holdings in the area of parole revocation.

Furthermore, the majority goes on to declare that in 2014—after he served the entire sentence in Pennsylvania—minimum due process required that Jefferson be afforded counsel, notice of the evidence, an opportunity to be heard in person, and the right to confront and cross-examine adverse witnesses, as well as the right to relitigate the merits of that offense. The majority opinion ignores the requirements of G.L. 1956 § 13-8-14(b), the statute under review in this case, and imposes requirements that will drastically alter the manner in which the Parole Board conducts parole-revocation proceedings. The opinion amounts to a judicial amendment of the parole statute.

Parole revocation has long been recognized as a "nonadversarial, administrative process[] established by the States" that is "predictive and discretionary," designed "to promote the best interests of both parolees and society * * *." *Pennsylvania Board of Probation and Parole v. Scott*, 524 U.S. 357, 366, 367 (1998) (quoting *Gagnon v. Scarpelli*, 411 U.S. 778, 787-88 (1973)). Indeed, the Supreme Court has refused "to intrude into the States' correctional schemes[,]" recognizing that "States have wide latitude under the Constitution to structure parole revocation proceedings." *Id.* at 365, 367.

In this state, the parole system is a creature of the Legislature. One who is imprisoned as a result of a criminal conviction is "turned over to an administrative agency for the execution of the sentence." *State v. Fazzano*, 96 R.I. 472, 478, 194 A.2d 680, 684 (1963). Parole is a legislatively-created system, governed by chapter 8 of title 13 of the general laws, whereby the prisoner is granted conditional release to serve the remainder of the sentence outside the confines of the prison, but under the supervision and upon conditions of the Parole Board, an administrative body created by the Legislature. "Courts have no power to determine the penological system; this is within the exclusive jurisdiction of the [L]egislature." *Fazzano*, 96

R.I. at 478, 194 A.2d at 684. This Court has adopted a "hands-off" policy when dealing with Parole Board proceedings, and has consistently expressed our reluctance to interfere with this orderly, legislatively-created structure. *State v. Ouimette*, 117 R.I. 361, 363, 367 A.2d 704, 706 (1976). "This [C]ourt has previously acknowledged a historically hands-off policy with respect to board proceedings 'and the overall reluctance to interfere with what must necessarily be highly discretionary decisions.'" *Pine v. Clark*, 636 A.2d 1319, 1324 (R.I. 1994) (quoting *Ouimette*, 117 R.I. at 363, 367 A.2d at 706). At no time in the thirty-plus years since our holding in *Gaze*, in which we acknowledged that basic due-process requirements were required in parole-revocation proceedings, has this Court had occasion to interfere with the proceedings of the Parole Board. *See Gaze*, 521 A.2d at 127. We certainly have never ventured into this area in the absence of a justiciable issue, with no briefing by the parties. In this appeal, without any analysis, the majority has judicially altered the procedures of the Parole Board and, with no record before us, concluded that the Parole Board violated Jefferson's constitutional rights.

Parole-revocation hearings are administrative in nature and governed by statute. Section 13-8-18 provides that a majority of the members of the Parole Board may, in accordance with the provisions of § 13-8-18.1, revoke any permit issued to any prisoner under its jurisdiction. Section 13-8-18.1 sets forth in detail the process under which the Parole Board may exercise its broad discretion. Section 13-8-18.1 is set forth in its entirety here because several of its provisions have a direct bearing on this case:

> **"13-8-18.1. Preliminary parole violation hearing.**
>
> "(a) As soon as is practicable after a detention for an alleged violation of parole, the parole board shall afford the alleged parole violator a preliminary parole revocation hearing before a hearing officer designated by the board. Such hearing officer shall not

have had any prior supervisory involvement over the alleged violator.

"(b) The alleged violator shall, within five (5) days of the detention, in Rhode Island be given written notice of the time, place and purpose of the preliminary hearing. The notice shall state the specific conditions of parole that are alleged to have been violated and in what manner. The notice shall also inform the alleged violator of the following rights in connection with the preliminary hearing:

"(1) The right to appear and speak in his/her own behalf;
"(2) The right to call witnesses and present evidence;
"(3) The right to confront and cross-examine the witnesses against him/her, unless the hearing officer finds on the record that a witness may be subjected to risk of harm if his or her identity is revealed; and
"(4) The right to retain counsel and, if unable to afford counsel, the right under certain circumstances to the appointment of counsel for the preliminary hearing.

"The determination of whether or not the alleged violator is entitled to appointed counsel, if such a request is made, shall be made on the record and in accordance with all relevant statutory and constitutional provisions.

"(c) The notice form must explain in clear and unambiguous language the procedures established by the parole board concerning an alleged violator's exercise of the rights denominated in subsection (b), including the mechanism for compelling the attendance of witnesses, the mechanism for obtaining documentary evidence, and the mechanism for requesting the appointment of counsel.

"(d) The preliminary hearing shall take place no later than ten (10) days after service of notice set forth in subsection (b). A preliminary hearing may be postponed beyond the ten (10) day time limit for good cause at the request of either party, but may not be postponed at the request of the state for more than five (5) additional days. The parole revocation charges shall be dismissed

with prejudice if a preliminary hearing is not conducted within the time period established by this paragraph, not including any delay directly attributed to a postponement requested by the alleged violator.

"(e) If the alleged violator has requested the appointment of counsel at least five (5) days prior to the preliminary hearing, the preliminary hearing may not proceed without counsel present unless the hearing officer finds on the record, in accordance with all relevant statutory and constitutional provisions, that the alleged violator is not entitled to appointed counsel. *If the alleged violator is found to have been entitled to counsel and no such counsel has been appointed, the parole violation charges must be dismissed with prejudice.* If the request for counsel was made four (4) or fewer days in advance of the preliminary hearing, the time limit within which the preliminary hearing must be held may be extended up to five (5) additional days.

"(f) The standard of proof at the preliminary hearing shall be probable cause to believe that the alleged violator has violated one or more conditions of his or her parole and that the violation or violations were not de minimus in nature. *Proof of conviction of a crime committed subsequent to release on parole shall constitute probable cause for the purposes of the preliminary hearing.*

"(g) At the preliminary hearing, the hearing officer shall review the violation charges with the alleged violator, direct the presentation of the evidence concerning the alleged violation, receive the statements of the witnesses and documentary evidence, and allow cross-examination of those witnesses in attendance. All proceedings shall be recorded and preserved.

"(h) At the conclusion of the preliminary hearing, the hearing officer shall inform the alleged violator of his or her decision as to whether there is probable cause to believe that the alleged violator has violated one or more conditions of his or her parole and, if so, whether the violation or violations were de minimus in nature. Those determinations shall be based solely on the evidence adduced at the preliminary hearing. The hearing officer shall state in writing the reasons for his or her determinations and the

evidence relied upon for those determinations. A copy of the written findings shall be sent to the alleged violator, and his or her counsel if applicable, within fourteen (14) days of the preliminary hearing.

"(i) If the hearing officer finds that there is no probable cause to believe that the alleged violator has violated one or more conditions of his or her parole or that the violation or violations, if any, were de minimus in nature, the parole chairperson shall rescind the detention warrant and direct that the alleged violator, unless in custody for other reasons, be released and restored to parole supervision.

"(j) If the hearing officer finds that there is probable cause to believe that the alleged violator has violated one or more conditions of his or her parole and that the violation or violations were not de minimus in nature, the alleged violator shall be held for a final parole revocation hearing. A final parole revocation hearing must be held as soon as is practicable, but in no event more than ninety (90) days after the conclusion of the preliminary hearing.

"(k) An alleged violator may waive his or her right to a preliminary hearing. Such a waiver must be in written form. In the event of such a written waiver, a final parole revocation hearing must be held as soon as is practicable, but in no event more than ninety (90) days after the right to a preliminary hearing is waived. Notwithstanding the above, a final parole revocation hearing may be continued by the alleged violator beyond the ninety (90) day time period." (Emphasis added.)

The majority opinion wholly overlooks this statute, in which the Legislature has enacted a comprehensive and efficient procedure for the Parole Board to address parole violations. This Court should refrain from entering these waters. First, clearly, the parolee's due-process rights to notice and an opportunity to be heard and to confront one's accusers, as set forth in § 13-8-18.1(a) and (b), mirrors the Supreme Court's pronouncement in *Morrissey*, 408 U.S. at 489. Second, the parolee's right to counsel and right "under certain circumstances to the

appointment of counsel" also are provided by statute. *See* § 13-8-18.1(b)(4). Critically, for purposes of this case, § 13-8-18.1(e) provides that "[i]f the alleged violator is found to have been entitled to counsel and no such counsel has been appointed, the parole violation charges *must be dismissed with prejudice*." (Emphasis added.) Alarmingly, with no record of the Parole Board proceeding, the majority has concluded that Jefferson was entitled to counsel, and that no such counsel was appointed.

<strong>Jefferson's Parole Violation</strong>

To begin with, we have no record in this case and, with the exception of the documents attached to Jefferson's *pro se* application for postconviction relief, we have no idea what occurred before the Parole Board in 1994, and again in 2014, twenty years after the conviction that gave rise to Jefferson's parole revocation. What is clear in these paltry materials is that Jefferson sought to relitigate the merits of his Pennsylvania criminal conviction before the Parole Board and again in Superior Court on postconviction relief, where he alleged actual innocence to those charges. The majority has declared that it was error for the Parole Board to deny Jefferson counsel and an opportunity to be heard in person when the Parole Board voted to revoke his parole on November 10, 1994, and again at the 2014 hearing. The majority also concludes that Jefferson was entitled to disclosure of the evidence against him, the right to confront and cross-examine adverse witnesses, and a written statement of the evidence relied upon in revoking his parole. The majority is mistaken. The Pennsylvania conviction is conclusive on the question of whether Jefferson committed a parole violation. *See* § 13-8-18.1(f). In the usual course of events, when confronted with a finding of probable cause to conclude that the parolee has violated a condition of his or her parole, the Parole Board, in a final hearing, would determine

- 19 -

whether Jefferson's parole permit should be revoked. In the case of a criminal conviction, the parolee is not entitled to relitigate the merits of the conviction.

However, because Jefferson was serving a sentence of life imprisonment when he was granted parole, the Parole Board's discretion was limited. The only question before the Parole Board was whether Jefferson's felony conviction in Pennsylvania for aggravated assault falls within the provisions of § 13-8-14(b). This is a question of law. The majority opinion ignores the provisions of this statute that are triggered upon conviction of a violent crime while on parole, by one serving a sentence of life imprisonment, and "shall constitute an *automatic revocation of parole* and the prisoner shall not be eligible for parole thereafter." (Emphasis added.) This is the controlling statutory provision before this Court.

Section 13-8-14(b) provides, in its entirety:

> "In the case of a prisoner sentenced to imprisonment for life who is released on parole and who is subsequently convicted of a crime of violence as defined in § 11-47-2, the conviction shall constitute an automatic revocation of parole and the prisoner shall not be eligible for parole thereafter."

After his term of incarceration in Pennsylvania, Jefferson was returned to Rhode Island and appeared before the Parole Board on April 14, 2014; he was subsequently informed that the Parole Board voted to affirm his 1994 parole revocation. It is fair to say that, in the face of a final criminal conviction for a violent felony, the board had no discretion but to inform Jefferson that the provisions of § 13-8-14(b) applied to him.

The operative language in § 13-8-14(b) is that "the *conviction* shall constitute an *automatic revocation* of parole[.]" (Emphasis added.) A conviction for a crime of violence, as enumerated in § 11-47-2, is conclusive. Because the Pennsylvania conviction is accorded full faith and credit, no court or administrative body would look behind the judgment to determine

- 20 -

whether there is probable cause to conclude that the parolee violated parole. The majority's suggestion that *Morrissey* mandates or even permits the Parole Board to look beyond the conviction and permit Jefferson to confront his accusers twenty years after the conviction simply is wrong. *See Lee v. Gough*, 86 R.I. 23, 32, 133 A.2d 779, 783 (1957) (considering parole to be void as of the date of subsequent criminal conviction); *see also State v. Seamans*, 935 A.2d 618, 622 (R.I. 2007) (admission of guilt to the underlying offense is tantamount to admission of fault with respect to probation violation). Furthermore, the Legislature has addressed the effects of a criminal conviction in the parole violation context: Section 13-8-18.1(f) provides, in relevant part, that "[p]roof of conviction of a crime committed subsequent to release on parole shall constitute probable cause for the purposes of the preliminary hearing." Thus, the issue of whether Jefferson violated his parole in Pennsylvania was conclusive; it is not however, the controlling issue in this case.

It is only when a parolee serving a life sentence has been convicted of an enumerated violent crime that § 13-8-14(b) becomes operative and "shall constitute an automatic revocation of parole[.]" By employing the term "automatic," the Legislature has divested the Parole Board of any discretion in its application. Parole is revoked by operation of law, and the second part of that section comes into play: "the prisoner shall not be eligible for parole thereafter." In the case at bar, it was only *after* Jefferson was convicted of aggravated assault and sentenced to and served twenty years in prison in Pennsylvania that the Parole Board entered its final revocation decision. *See Moody v. Daggett*, 429 U.S. 78, 87 (1976) (final parole revocation hearing not constitutionally required until the prisoner is taken into custody as a parole violator).

Once Jefferson returned to Rhode Island in 2014 as a parole violator, it was incumbent upon the Parole Board to determine whether the crime of aggravated assault, for which he had

been convicted, fell within the enumerated offenses set forth in § 11-47-2. I am confident that the Parole Board did not employ the provisions of § 13-8-14(b) in a vacuum and that the presumption of administrative regularity that generally attaches to the decisions of administrative bodies obtains in this case. *See Ouimette*, 117 R.I. at 372, 367 A.2d at 710 (the Court has every confidence that the Parole Board, charged with significant responsibility, carries out its duties faithfully according to statutory directions); *see generally Gardner v. Cumberland Town Council*, 826 A.2d 972, 978 (R.I. 2003) (broad latitude given to legislative bodies). Furthermore, and most critically, whether Jefferson's Pennsylvania conviction fell within the provisions of § 11-47-2 is a question of law that is reviewed *de novo*. The mandate set forth in the majority opinion requires the Parole Board "to conduct a new parole revocation hearing which complies with the requirements of due process and the right to be represented by counsel * * *." The majority should explicate just what is expected of the Parole Board at this juncture, and how it should be accomplished.

Unfortunately, this analysis is not the terminus of my alarm at the degree and breadth of error in the majority's opinion.

### Waiver

In a *footnote*, the majority opinion reaches and then decides the question of whether, in his *pro se* application for postconviction relief, Jefferson waived the constitutional claims raised by his appellate counsel on appeal. Indeed, the majority not only concludes that, by citing *Morrissey*, Jefferson "clearly raised the violation of his due process rights"—which is irrelevant—but with no analysis, discussion, or citation to authority, the majority takes an unacceptable leap and declares that, by merely *mentioning* "due process" in his *pro se* application for postconviction relief, Jefferson preserved "his contention that the *ex post facto*

- 22 -

clause of the United States Constitution was violated when his parole was revoked and he was denied the possibility of parole in the future." This remarkable holding, set forth in a footnote, is legally incorrect and overlooks the entire argument by the state, which was based on waiver. Because the question of waiver forms the basis for the state's argument in favor of affirming the judgment of the Superior Court, its resolution belongs in the body of the opinion with appropriate jurisprudential support and analysis.

There is no question that, in the ordinary case, the raise-or-waive rule would be a significant hurdle for Jefferson to overcome. Even Jefferson does not suggest that the mere mention of the phrase "due process" suffices to overcome the raise-or-waive rule. In his reply brief to this Court, Jefferson argues against the application of the raise-or-waive rule, not because the issues were preserved as the majority concludes, but in light of the grave injustices wrought upon him by the application of *Shatney v. State*, 755 A.2d 130 (R.I. 2000), to his *pro se* application for postconviction relief, such that the question of waiver ought not apply. I agree. The applicant was denied his statutory right to counsel, and he has every right to have his claims fully and fairly litigated in the Superior Court.

### *Shatney* Should be Laid to Rest

I also write separately to express my firm belief that this Court should abrogate the holding in *Shatney*, 755 A.2d at 136, in its entirety. This Court's attempt in *Shatney* to short-circuit duplicitous applications for postconviction relief has too often resulted in the denial of an applicant's right to collateral review of his or her conviction. Simply put, the *ad hoc* nature of *Shatney* and the questionable procedure in which counsel is appointed to undertake an initial review of the merits of a case is a procedural and substantive hodgepodge. *See Campbell v. State*, 56 A.3d 448, 456 (R.I. 2012) (the Superior Court erroneously interpreted *Shatney* as

- 23 -

requiring an attorney to report back to the court rather than represent the applicant). It is my opinion that the salutary goal we aimed to accomplish in *Shatney* has been misconstrued by the trial bench, is inconsistently applied, and produces disparate and unjust results. Furthermore, the *Shatney* practice overlooks the statutory right of a postconviction-relief applicant in this state to have the assistance of counsel, and ignores the statutory mandate that the *Public Defender* shall be appointed to represent indigent applicants in postconviction-relief cases.

In the case at bar, in accordance with § 13-8-14(b), as a result of his Pennsylvania conviction, Jefferson has been denied any further opportunity for release on parole. He filed a *pro se* application for postconviction relief, and private counsel was appointed. The record contains no explanation as to why the Public Defender was not appointed. *See* G.L. 1956 § 10-9.1-5. The first order of business was to comply with *Shatney's* distasteful gatekeeping function as a condition precedent to litigating one's claim. Private counsel was appointed to determine whether there were any viable issues that would warrant counsel remaining in the case. Notably, the no-merit review performed by private counsel was based solely on the *pro se* application, with no consideration by counsel that other viable grounds for collateral review may exist such that an amended application was in order.

Although the Public Defender in practice refuses to take on *Shatney* cases, notwithstanding the command of the Legislature that the applicant shall be represented by the Public Defender, on appeal, after the case has been dismissed, the Public Defender enters the case, comes before this Court and proceeds to condemn both the trial justice and the *Shatney*

attorney.[1] As a result, in this case and in many others, applicants seeking postconviction relief are deprived of their right to collateral review of their convictions.

Additionally, § 10-9.1-6(b) specifically allows for summary dismissal of applications for postconviction relief on the pleadings where there is no basis for relief. It provides:

> "When a court is satisfied, on the basis of the application, the answer or motion, and the record, that the applicant is not entitled to post conviction relief and no purpose would be served by any further proceedings, it may indicate to the parties its intention to dismiss the application and its reasons for so doing. The applicant shall be given an opportunity to reply to the proposed dismissal. In light of the reply, or on default thereof, the court may order the application dismissed or grant leave to file an amended application or direct that the proceedings otherwise continue. Disposition on the pleadings and record is not proper if there exists a genuine issue of material fact." Section 10-9.1-6(b).

The distinguishing factor between *Shatney* and § 10-9.1-6(b) is that the applicant has the benefit of counsel, and the trial justice, the ultimate factfinder, is not called upon to initiate summary disposition measures as a condition precedent to collateral review. Accordingly, it is my opinion that although *Shatney* was a worthwhile and well-intended effort by this Court, it is time for *Shatney* to be assigned to the graveyard of noble causes.

**Conclusion**

For the reasons set forth in this opinion, I respectfully dissent in this case. I would vacate the judgment and remand this case to the Superior Court with directions to appoint counsel for the applicant and proceed, *ab initio*, in accordance with the provisions of the Post Conviction Remedy statute, chapter 9.1 of title 10.

---

[1] In her reply brief to this Court, counsel for Jefferson declared that "Mr. Jefferson's court-appointed post-conviction attorney conducted absolutely no investigation into the case and determined that the issues raised in his client's *pro se* pleadings lacked merit. Likewise, a Superior Court judge promptly endorsed this erroneous no-merit finding despite the existence of glaring constitutional issues that appear after reading R.I.G.L. § 13-8-14(b), the statute implicated in this case."

## SUPREME COURT – CLERK'S OFFICE

## OPINION COVER SHEET

| | |
|---|---|
| **Title of Case** | Leonard Jefferson v. State of Rhode Island. |
| **Case Number** | No. 2015-323-Appeal.<br>(PM 14-3816) |
| **Date Opinion Filed** | June 7, 2018 |
| **Justices** | Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ. |
| **Written By** | Associate Justice William P. Robinson III |
| **Source of Appeal** | Providence County Superior Court |
| **Judicial Officer From Lower Court** | Associate Justice Robert D. Krause |
| **Attorney(s) on Appeal** | For Petitioner:<br><br>Camile A. McKenna<br>Office of the Public Defender |
| | For State of Rhode Island:<br><br>Aaron L. Weisman<br>Department of Attorney General |